GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6665
E-mail: ggarman@gtg.legal
WILLIAM M. NOALL, ESQ.
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
[Proposed] *Attorneys for Chief Restructuring Officer and* [Proposed] *Counsel to the Debtor*

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>J & J CONSULTING SERVICES, INC.,<br><br>Debtor. | Case No.: BK-22-10942-MKN<br><br>Chapter 11<br><br>Date: OST Requested<br>Time: OST Requested |

**EMERGENCY AGREED APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION, EMPLOYMENT, AND APPOINTMENT
OF PETER KRAVITZ AS THE ALLEGED DEBTOR'S
CHIEF RESTRUCTURING OFFICER**

Peter Kravitz ("Kravitz"), by and through Province Partners, LLC ("Province"), hereby moves for entry of an order pursuant to Sections[1] 105(a) and 363(b) of the Bankruptcy Code authorizing J & J Consulting Services, Inc. (the "Alleged Debtor" or the "Company") to retain, employ, and appoint Kravitz, through Province, as Alleged Debtor's chief restructuring officer ("CRO").

---

[1] Unless otherwise stated, all references to "Chapter" and "Section" herein shall be to title 11 of the U.S. Code (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure; and all references to "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

This application (the "Application") is based on the points and authorities herein, on the declarations of Kevin N. Anderson, Esq. (the "Anderson Decl.") and Peter Kravitz (the "Kravitz Decl."), each submitted contemporaneously herewith and incorporated by this reference, and any oral argument this Court chooses to entertain.

## I.
## INTRODUCTION

Alleged Debtor has been accused of operating a multi-million dollar *Ponzi* scheme. As a result, certain creditors commenced the above-captioned involuntary proceeding while, at the same time, multiple other creditors commenced various litigations in other courts seeking to recover, freeze, and/or control assets of the Alleged Debtor. These actions further include attempts to marshal assets of non-debtor parties based on allegations that those assets were obtained using funds received from the operations of the Alleged Debtor. In short, there is currently a race to the courthouse and disorganized, and potentially inconsistent, attempts to grab Alleged Debtor's assets. The end result is, without the intervention and oversight of an independent fiduciary, Alleged Debtor and related persons and entities are likely to continue to be forced to focus their efforts on responding to a scatter-shot approach to litigation that is certain to unnecessarily deplete assets and delay recovery.

Based upon media reports, significant distrust of Alleged Debtor's current management has become rampant. Therefore, Alleged Debtor, with the approval and consent of the Petitioning Creditors,[2] seeks to retain Kravitz, through Province, to serve as its CRO in order to permit an orderly and successful continuation of these proceedings and remedy the disorganized and inconsistent attempts to grab assets of the Alleged Debtor and related persons and entities. To accomplish this, as reflected in **Exhibit "1"** hereto, Alleged Debtor agrees that, contemporaneous with approval of this Application, Kravitz is authorized and empowered to consent to entry of the Order for Relief and immediately commence the task of marshalling and recovering all assets which rightfully belong to the estate and provide the best outcome for recovery to interested

---

[2] The "Petitioning Creditors" are defined as Keith Ozawa, Anthony Bonifazio, Brian Schumann, and Martin Keevin Cordova.

parties. In doing so, Kravitz will act as an independent fiduciary to protect the interest of creditors. The approval of the retention of the CRO sets in motion the process that all parties desire, which is an open and transparent investigation, pursuit of claims, and an organized asset recovery that ensures that Alleged Debtor's assets are not improperly and unfairly depleted through the haphazard race to the courthouse that bankruptcy relief seeks to prevent. Thus, the relief requested in this Application is necessary to the successful administration of this Chapter 11 case, and to provide assurance to creditors, parties in interest and the Court that there is an independent fiduciary overseeing these proceedings and the Debtor's financial operations.

## II.
## JURISDICTION AND VENUE

1.  The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134 and Local Rule 1001(b)(1). Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of Alleged Debtor's Chapter 11 case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  Petitioning Creditors filed a *Motion for Appointment of (A) Chapter 11 Trustee Either (I) for Cause Under 11 U.S.C. § 1104(a)(1) or (II) in the Best Interests of Creditors Under 11 U.S.C. § 1104(a)(2) and Federal Rules of Bankruptcy Procedure 2007.1(a), 2009, and 9014 and (B) Gap Period Trustee Pending Entry of the Order for Relief Under 11 U.S.C. § 303* (the "Trustee Motion") [ECF No. 6] on April 1, 2022, which Trustee Motion remains pending.

3.  The statutory basis for the relief sought herein arises from Sections 105 and 363[3] of the Bankruptcy Code and Bankruptcy Rule 6004.

4.  Pursuant to LR 9014.2, Kravitz consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution. . . .

---

[3] As set forth herein, pursuant to Section 303(f), Alleged Debtor is not bound by Section 363, but Kravitz seeks the requested relief pursuant to Section 363 because, if the Application is granted, Alleged Debtor will consent to entry of the Order for Relief.

## III.
## BACKGROUND

5. On March 17, 2022 (the "Petition Date"), the Petitioning Creditors filed an involuntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned case against the Alleged Debtor (the "Chapter 11 Case"). See ECF No. 1.

6. The Petitioning Creditors filed the Chapter 11 Case alleging that Alleged Debtor, among others, was operating a *Ponzi* scheme in excess of $300,000,000. See, e.g., ECF No. 4.

7. The Petitioning Creditors are not alone. In fact, as of the date of this filing, in addition to the two involuntary proceedings and an adversary proceeding the Petitioning Creditors have commenced, no less than three litigation cases are actively pending related to Alleged Debtor, its affiliates, and other entities purportedly involved in their operation. See Anderson Decl. ¶ 3.

8. Specifically, the following cases are currently pending with respect to Alleged Debtor; J and J Purchasing, LLC, its affiliate; or other purported participants in the alleged *Ponzi* scheme:

   a. *In re J & J Consulting Services, Inc.*, Case No. 22-10942-MKN, pending in the Nevada Bankruptcy Court;

   b. *In re J and J Purchasing, LLC*, Case No. 22-10943-MKN, pending in the Nevada Bankruptcy Court;

   c. *Bonifazio, et al. v. Judd, Judd Nevada Trust, dated December 15, 2020, J & J Consulting Services, Inc., Beasley, Beasley Law Group PC, Jager, Jager Family Trust, Dated June 30, 2009, Stirling Consulting L.L.C., Jongeward, Carolina Chase Trust Dated _____*, Adv. No. 22-01061-MKN pending in the Nevada Bankruptcy Court;

   d. *Murphy, et al. v. Beasley, Beasley Law Group PC, Judd, J&J Consulting Services, Inc., J and J Purchasing, LLC*, Case No. A-22-849806-B pending in the Eighth Judicial District Court for the District of Nevada (the "*Murphy* Action");

   e. *Henzel, et al. v. Judd, et al.*, Case No. 2:22-cv-00529, pending before the United Stated District Court for the District of Nevada;

   f. *Lewis, et al. v. Wells Fargo Bank, N.A., Beasley Law Group PC, Beasley*, Case No. A-

GARMAN TURNER GORDON
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

22-850036-C pending in the Eighth Judicial District Court for the District of Nevada. See Anderson Decl. ¶ 4.

9. In addition, multiple law firms have established websites seeking to solicit investors in Alleged Debtor's business which are likely to result in a multitude of additional litigation through the country. See Anderson Decl. ¶ 5.

10. Of significant concern, the various litigations seek to freeze, control, and/or recover assets of various non-debtor parties that may be properly recovered by the Alleged Debtor's estate based on preference, fraudulent transfer, or other legal theories. See Anderson Decl. ¶ 6.

11. Most recently, and despite the existence of the Chapter 11 Case, Danial Ayala was purportedly appointed as a receiver over, among others, Alleged Debtor in the *Murphy* Action. See Anderson Decl. ¶ 7. Ex. "1."

12. In complete disregard for the bankruptcy automatic stay,[4] Mr. Ayala contends that his appointment is proper, and he has threatened to begin marshalling the assets of the Alleged Debtor and related persons. See Anderson Decl. ¶ 8.

13. Alleged Debtor is currently controlled and operated by Jeffrey Judd, who serves as its president, treasurer, and sole director. See Anderson Decl. ¶ 9.

14. Alleged Debtor believes that a chief restructuring officer is necessary in this case in order to marshal Alleged Debtor's assets and monitor and centralize all pending litigation in order to present the best recovery for the creditors in this case. Critically, bankruptcy courts are uniquely qualified to address situations such as this where multiple litigations against various parties threated to deplete the recovery for creditors through haphazard and disorganized proceedings. See Anderson Decl. ¶ 10.

15. To that end, upon appointment, Kravitz is authorized and empowered to remove and replace Judd as the sole officer and director of Alleged Debtor and consent to entry of the order for relief in the Chapter 11 Case so that the investigation, recovery, and ultimate distribution

---

[4] Alleged Debtor is in the process of preparing a motion to this Court to declare the entry of the receivership order over Alleged Debtor as void as a violation of the automatic stay. Jeffrey Judd has filed a motion in the *Murphy* Action to set aside the receivership order as to him.

is performed openly under the guidance and oversight of this Court and in the full view of all interested parties. See Anderson Decl. ¶ 11, see also Exhibit "1" hereto.

16. The Petitioning Creditors consent to and support the appointment of the CRO under the terms discussed herein, and agree their request for a trustee as set forth in the Trustee Motion will be resolved upon approval of Kravitz's appointment. See Anderson Decl. ¶ 12.

## IV.
## RELIEF REQUESTED

17. Alleged Debtor, with the approval and consent of the Petitioning Creditors, has determined that it requires the services of a CRO, and that retention and appointment of Kravitz as CRO is in the best interests of Alleged Debtor, its estate, and all other parties in interest in this case. Alleged Debtor has selected Kravitz given his extensive experience as a fiduciary. As set forth below, Kravitz is well-versed in chapter 11 and restructuring matters. See Anderson Decl. ¶ 13.

18. Kravitz has agreed to serve as CRO, sole officer, and sole director of Alleged Debtor pursuant to the terms set forth herein. See Kravitz Decl. ¶ 6.

## V.
## SCOPE OF SERVICES TO BE RENDERED

1. As further detailed in the Engagement Letter, Province and Kravitz have agreed to perform CRO and related services. See Kravitz Decl., ¶ 6, Ex, "1."

2. Subject to further order of this Court and in accordance with the terms of the Engagement Order, Kravitz, through Province, has agreed to, *inter alia*:

   a) over the course of the retention, note any conflicts between J & J Consulting and J and J Purchasing and make such disclosures to the Bankruptcy Court;

   b) being designated as the sole responsible party and signatory for each of the Companies' banking and financial accounts;

   c) supervising and directing all action taken by the Company in the Bankruptcy Cases.

   d) supervising and directing all tracing, locating and taking possession and control of all assets ("Assets") of the Company;

   e) directing all business and operational matters of the Company;

f)  acting as the designated responsible person for the Company in the Bankruptcy Cases;

g)  directing the preparation of all financial information relative to the Company, including the preparation and submission of all statements and schedules required to be filed by the Companies in the Bankruptcy Cases;

h)  approving all cash disbursements, as and if reasonably necessary and with Bankruptcy Court approval as required by title 11 of the United States Code (the "**Bankruptcy Code**"), in order to maximize, protect and preserve the assets of the Companies for the benefit of its creditors;

i)  directing the investigation of all misfeasance, malfeasance and nonfeasance by persons that owe or owed duties to the Companies, including but not limited insiders and affiliates;

j)  directing all legal actions necessary or appropriate to protect the Companies' bankruptcy estates and best interest of the creditors, including the prosecution of all civil actions necessary or appropriate against insiders, affiliates and third parties to protect the Companies' bankruptcy estates and best interest of the creditors;

k)  co-operating with law enforcement, regulatory agencies and their agents and other persons enforcing state or federal police power ("collectively, "**Regulators**") by providing information reasonably necessary to their investigations, subject to reasonableness and proportionality;

l)  supervising and directing the management of the Companies' communications with creditors, investors, lenders and third-parties.

m)  directing and approving the disposition of physical assets of the Companies in ordinary course or with Bankruptcy Court approval as necessary pr appropriate.;

n)  retaining or terminating any employees, contractors or professionals relative to the Companies, including, but not limited to, hiring legal counsel, accountants, financial advisors, or other professionals for the benefit of the Companies or its creditors;

o)  participating in meetings with third-parties and their respective representatives on all material matters related to the Companies not mentioned above.

p)  hiring any professionals for the Companies as determined by the CRO;

q)  communicating with the Companies' counsel in any pending or future legal matters involving the Companies as a party in interest and negotiate resolution of any such matters;

r)  pursuing, settling, resolving or otherwise making all decisions relative to any claim for or against the Companies or any of their affiliates, subject to such approvals as may be required by the Bankruptcy Code;

s)  communicating with any steering, ad hoc or other creditor/equity committees, investor

       groups, creditors, lenders, and the like, as well as the Bankruptcy Court, related to the Companies; and

t) communicating with Regulators relative to the activities of the Companies and their affiliates; and

u) taking any and all other actions necessary to fulfill the responsibilities set forth above, including executing all necessary documentation on behalf of the Companies to effectuate same.

See Kravitz Decl., ¶ 7, Ex, "1."

      3.    Under the terms of the Engagement Agreement, Kravitz, through Province, can only be removed for misconduct and with approval of this Court. Thus, Kravitz is a true independent and authorized to operate Alleged Debtor without outside influence, and without the control of Alleged Debtor's prior officers and/or directors. See Kravitz Decl. ¶ 8.

      4.    In addition, Kravitz intends to file applications seeking to retain Garman Turner Gordon ("GTG") as legal counsel and Province, LLC as financial advisors in order to assist in the execution of the CRO duties. See Kravitz Decl. ¶ 9.

      5.    Alleged Debtor believes that Kravitz is well qualified to provide the foregoing professional services. See Anderson Decl. ¶ 14.

## VI.
## KRAVITZ'S QUALIFICATIONS

      6.    Alleged Debtor has selected Kravitz because of his knowledge of and experience in bankruptcy and restructuring matters. Alleged Debtor has determined that the retention of Kravitz is necessary and appropriate, and is in the best interests of the Alleged Debtor's estate, due to his expertise and qualifications in performing the services required in these cases and for the reasons enumerated herein. See Anderson Decl. ¶ 15.

      7.    Kravitz regularly serves assisting troubled companies, debtors, secured and unsecured creditors, equity holders, and other parties-in-interest in bankruptcy matters and has extensive experience providing fiduciary and management services in Chapter 11 cases. Kravitz serves as a professional fiduciary with a specific specialty in wind-down situations that focus on maximizing recoveries. Throughout his numerous engagements, he has consistently driven recoveries past waterfalls laid out in disclosure statements, initiated hundreds of millions of dollars

in affirmative litigation recoveries and orchestrated over 10 billion dollars in claim reductions. See Kravitz Decl. ¶ 4.

8. Kravitz also serves in a multitude of roles, including chief restructuring officer; advisor to and member of bankruptcy oversight and creditor committees; Chapter 11/Liquidating Trustee/Plan Administrator; Disbursing Agent; and member of boards of directors where his legal and business backgrounds are well-served. Furthermore, his litigation work has earned him titles such as American Lawyer Top 100 law firm partner, and in 2013 and 2014, he was selected as Southern California's Super Lawyer for Bankruptcy, Litigation and Trusts. See Kravitz Decl. ¶ 5.

9. The compensation terms set forth in the Engagement Letter are consistent with arrangements entered into by Province. See Kravitz Decl. ¶ 11.

10. Although Kravitz does not believe that there is a requirement that Province and Kravitz establish that they are disinterested and hold no interest that is adverse to Alleged Debtor, as set forth in the Kravitz Decl., Province and Kravitz have conducted a conflicts search of all known creditors and other parties in interest in this Chapter 11 Case. Based on the Kravitz Declaration, Alleged Debtor believes that, except as otherwise stated therein: (a) Province and Kravitz have no connection with Alleged Debtor, its creditors, the Office of the United States Trustee or its employees, or any other party in interest in these cases, or their respective attorneys or accountants; (b) Province and Kravitz are not a creditor, equity security holder, or insider of Alleged Debtor; (c) until the appointment as CRO, Kravitz was not an employee or agent, nor an officer, director, or employee of Alleged Debtor; and (d) Province and Kravitz do not hold or represent any interest that is adverse to Alleged Debtor, it estate, or any class of creditors or equity security holders. See Kravitz Decl. ¶ 14.

11. As of the Petition Date, Alleged Debtor had no debt owing to Province or Kravitz, and Province and Kravitz are not creditors in the Chapter 11 Case. Furthermore, neither Province nor Kravitz have been paid any amounts prior to this Application, nor have they ever been employed by Alleged Debtor. See Kravitz Decl. ¶ 15.

12. Based on the foregoing, Province and Kravitz are a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, and that neither Province nor Kravitz

hold or represent any interest that is adverse to Alleged Debtor, its estate, or any class of creditors or equity security holders. See Kravitz Decl. ¶ 16.

## VII.
## COMPENSATION

13. Pursuant to the terms of the Engagement Letter, Province and Kravtiz's fee will be established as a monthly fee of $50,000 per month under terms and conditions set forth therein. See Kravitz Decl. ¶ 10, Ex. "1."

14. Based on the contentions that Alleged Debtor operated a Ponzi scheme in excess of $300,000,000, which could result in a potential trustee recovery of approximately $9,000,000 pursuant to Section 326(a), the proposed monthly rate represents a significant discount of fees that would otherwise be deducted from the creditors' recovery. See Kravitz Decl. ¶ 12.

15. Alleged Debtor shall reimburse Kravitz for his reasonable and documented out-of-pocket expenses incurred in connection with his employment by the Alleged Debtor, including travel, lodging, duplicating, computer research, messenger services, and telephone charges. Kravitz shall submit monthly invoices detailing the out-of-pocket expenses, which invoices shall be circulated to the Alleged Debtor, the Office of the United States Trustee, and any committee appointed in this Chapter 11 Case, and if no objection is received withing ten calendar days, such amounts shall be paid by the Alleged Debtor. See Engagement Agreement.

16. Alleged Debtor shall also use its best efforts to pay for and bind one or more directors and officers liability indemnification insurance policies materially similar to a Broad Form Side-A DIC ("D&O Policies") that shall cover liabilities which may have accrued or that may be incurred by any Indemnified Party in relation to the services to be provided under this Agreement. See Engagement Agreement.

17. Because Kravitz will not be employed as a professional pursuant to Section 327 of the Bankruptcy Code, Alleged Debtor requests that Kravitz not be required to submit fee applications under Sections 330 and 331 of the Bankruptcy Code. However, consistent with In re Copenhaver, Inc., 506 B.R. 757, 764 (Bankr. C.D. Ill. 2014) and related authority, Kravitz's fees and expenses will ultimately be subject to approval by the Court under a reasonableness standard.

# VIII.
# INDEMNIFICATION

18. Pursuant to the Engagement Letter, Alleged Debtor shall indemnify and hold harmless each of Province and Kravitz, and each of their affiliates and their respective shareholders, principals, managers, members, employees, agents, representatives, consultants and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations, disbursements and expenses, including the cost (fees and disbursements) for counsel or others (including employees or consultants of Province, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found by a court of competent jurisdiction to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. See Engagement Agreement.

19. The indemnification provisions of the Engagement Letter are reasonable and are a condition of Province's engagement. Indemnification terms of the sort described herein are standard in the market for firms providing restructuring, turnaround, and similar services. See Kravitz Decl. ¶ 13.

# IX.
# LEGAL AUTHORITY

As an alleged debtor in an involuntary proceeding in which no order for relief has been entered, Alleged Debtor is permitted to continue to operate, and Alleged Debtor may continue to use, acquire, or dispose of property as if the involuntary case has not been commenced. See 11 U.S.C. § 303(f). As a result, Alleged Debtor is not required to obtain approval of the CRO retention prior to entry of an order being entered. Id., see also In re McNair, 116 B.R. 746, 749 (Bank. S.D.Cal. 1990) ("an order approving employment of counsel for an alleged debtor is not

required prior to entry of the order for relief"). However, as a sign of its good faith, and in an abundance of caution, and upon Alleged Debtor's representation that if the relief requested herein is granted, Alleged Debtor will contemporaneously consent to entry of the Order for Relief, Kravitz, with the approval and consent of the Petitioning Creditors, seek approval of Province's retention as set forth herein under the standards set forth in Section 363.

Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession[5] "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. § 363(b)(l). Under applicable case law, courts will approve a debtor's proposed use of its assets under Section 363(b)(l) if it will serve a sound business purpose on the part of the debtor. Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a business judgment test."); In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (courts defer to a trustee's judgment concerning use of property under §363(b) when there is a legitimate business justification).

Bankruptcy courts have analyzed the propriety of a debtor's employment of corporate restructuring officers and advisors under Section 363 and determined that it is an appropriate exercise of the debtor's business judgment to employ a restructuring advisor under Section 363 rather than under Section 327(a). See e.g., In re Nine W. Holdings, Inc., 588 B.R. 678, 688 (Bankr. S.D.N.Y. 2018); In re Copenhaver, Inc., 506 B.R. 757, 764 (Bankr. C.D. Ill. 2014).[6]

---

[5] As set forth above, while it has not done so, since Alleged Debtor is not a debtor in possession, it remains free to utilize its assets without regarding the Section 363. Thus, nothing herein shall be construed as an admission or waiver of any sort but instead, the legal argument set forth herein is solely to demonstrate that, even under the more restrictive requirements of Section 363, the requested relief is authorized.

[6] A number of unpublished decisions are in accord. See, e.g., In re Fatburger Rest. of Cal., Inc., Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16, 2011); In re Westcliff Med. Labs., Inc., Case No. 10- 16743 (Bankr. C.D. Cal. June 25, 2010); In re Fairfield Residential LLC, Case No. 09-14378 (Bankr. D. Del. Jan 13, 2010); In re Motor Coach Indus. Int'l, Inc., Case No. 08-12136 (Banks. D. Del Oct. 15, 2008) (approving retention of CRO and crisis managers); In re Pappas Telecasting, Inc., Case No. 08-10916 (Bankr. D. Del June 26, 2008); In re Linens Holding Co., Case No. 08-10832 (Bankr. D. Del May 28, 2008); In re Hoop Holdings, LLC, Case No. 08-10544 (Bankr. D. Del Apr. 22, 2008); In re TOUSA, Inc., Case No. 08-10928 (Bankr. S.D. Fla. Mar. 26, 2008); In re Am. Home Mortgage Holdings, Inc., Case No. 07-11047 (Bankr.

1  Kravitz's services are necessary and essential to Alleged Debtor's Chapter 11 efforts, and the Alleged Debtor's employment of Kravitz as CRO is based on a sound exercise of business judgment pursuant to Section 363(b) of the Bankruptcy Code. Kravitz has extensive experience providing services to distressed companies in similar circumstances, with a specialty in wind-down situations that focus on maximizing recoveries.  Furthermore, approval of the CRO retention will result in the Order for Relief being entered and the Trustee Motion being resolved. This will permit an organized continuation of the Chapter 11 Case in which all parties can focus their efforts on asset recovery, all creditors and interested parties can participate in a fair and open process in which assets are not unnecessarily and unfairly depleted in the race to the courthouse, and the best possible outcome for creditors is preserved.

## X.
## NOTICE

Kravitz shall serve notice of this Motion on the following: (i) the Office of the United States Trustee for the District of Nevada; and (ii) other interested parties as listed on the service list, and (ii) any entity which files and serves a request for special notice prior to the filing of this Motion.

. . .

. . .

. . .

. . .

. . .

---

D. Del. Sept. 5, 2007); In re Calpine Corp., Case No. 05-60200 (Bankr. S.D.N.Y. Jan 17, 2007); In re Safety-Kleen Corp., Case No. 00-2303 (Bankr. D. Del. 2000); In re Harnischfeger Industries, Inc., Case No. 99-2171 (Bankr. D. Del. 1999).

GARMAN TURNER GORDON
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

# XI.
# CONCLUSION

WHEREFORE Kravitz respectfully requests that the Court enter an order (i) approving the employment of and appointment of Kravitz as CRO; (ii) approving the compensation terms set out above; and (iii) granting such other and further relief as may be just and proper.

DATED this 5th day of April, 2022.

GARMAN TURNER GORDON LLP

By: /s/ Teresa M. Pilatowicz
    GREGORY E. GARMAN, ESQ.
    WILLIAM M. NOALL, ESQ.
    TERESA M. PILATOWICZ, ESQ.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    [Proposed] *Attorneys for Chief Restructuring Officer and* [Proposed] *Counsel to the Debtor*

# EXHIBIT 1

# EXHIBIT 1

# WRITTEN CONSENT OF
# SOLE DIRECTOR OF J & J CONSULTING SERVICES, INC

April 5, 2022

The undersigned (the "Sole Director"), being the sole director of J & J Consulting Services, Inc., a Nevada corporation (the "Company"), hereby consents to and adopts the following resolutions and takes the following actions with the same force and effect as if such resolutions had been duly adopted and such actions duly taken at a meeting of the Sole Director duly called and convened for such purpose on the above date:

**WHEREAS,** an involuntary petition (the "Petition") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") was filed against the Company on or about March 17, 2022 in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), thereby commencing Case No. 22-10942 (the "Bankruptcy Case")

**WHEREAS**, the Sole Director has extensively analyzed the alternatives available to the Company, and has determined that it is in the best interests of the Company to appoint, subject to the approval of the Bankruptcy Court, a Chief Restructuring Officer ("CRO") to oversee the Company's efforts to address its financial affairs, and to direct the CRO to consent to an Order for Relief in the Bankruptcy Case and to appoint the CRO as an independent fiduciary for creditors in the Bankruptcy Case.

**NOW THEREFORE, BE IT RESOLVED** as follows:

**RESOLVED**, that Peter Kravitz of Province Partners, LLC is appointed, subject to the approval of the Bankruptcy Court, as CRO and sole director of the Company; and it is further

**RESOLVED**, that Jeffrey Judd is removed, subject to the approval of the Bankruptcy Court, as an officer and sole director of the Company; and it is further

**RESOLVED**, that in the event the Bankruptcy Court indicates its intent to approve the employment of the CRO in the Bankruptcy Case, then the CRO is authorized to immediately consent to entry of the Order for Relief in the Bankruptcy Case, and it is further

**RESOLVED**, that the CRO and such officers and agents of the Company as the CRO may specifically designate (collectively, the "Authorized Officer(s)"), acting either individually or jointly, after obtaining advice from the Company's financial and legal advisors and obtaining relevant information from the responsible employees of the Company, are hereby authorized and directed to execute any documents related to the Bankruptcy Case, and to cause the same to be filed with the Bankruptcy Court; and it is further

**RESOLVED**, that the Authorized Officers, and each of them, acting either individually or jointly, are hereby authorized to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals in executing, verifying, or filing documents in the Bankruptcy Case with a view to its successful prosecution, and it is further

**RESOLVED**, that the CRO shall immediately be granted sole signatory authority over all bank accounts of the Company, subject to oversight of the Bankruptcy Court upon conversion of such accounts to debtor-in-possession accounts upon entry of the Order for Relief, and it is further

## RETENTION OF PROFESSIONAL AND PAYMENT OF FEES AND EXPENSES

**RESOLVED**, the law firm of Garman Turner Gordon ("GTG") may be employed, at the direction of the CRO in his sole discretion, as counsel to the Company through the CRO under a general retainer in the Bankruptcy Case, subject to the approval of the Bankruptcy Court, and in connection therewith, the Authorized Officers, and each of them, acting either individually or jointly, are hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and cause to be filed an appropriate application for authority to retain the services of GTG; and it is further

**RESOLVED**, that Province, LLC ("Province") may be employed, at the direction of the CRO in his sole discretion, to provide financial advisory services to the Company through the CRO in the Bankruptcy Case, subject to the approval of the Bankruptcy Court, and in connection therewith, the Authorized Officers, and each of them, acting either individually or jointly, are hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and cause to be filed an appropriate application for authority to retain the services of Province; and it is further

**RESOLVED**, that the Authorized Officers, and each of them, are authorized, empowered, and directed to, on behalf of, and in the name of the Company, to retain any other professionals, including, but not limited to, a claims and noticing agent, to assist the Company in carrying out its duties in the Bankruptcy Case, subject to the approval of the Bankruptcy Court, and in connection therewith, the Authorized Officers, and each of them, acting either individually or jointly, are hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, and cause to be filed appropriate applications for authority to retain the services of any other professionals; and it is further

**RESOLVED**, that the Authorized Officers, and each of them, are authorized, empowered, and directed to, on behalf of, and in the name of the Company, incur and pay or cause to be paid all such fees and expenses as in their judgment shall be necessary, appropriate, or advisable to effectuate the purpose and intent of any and all of the foregoing resolutions, the making of such payment is conclusive evidence of the due authorization and approval thereto; and it is further

## GENERAL AUTHORIZATION AND RATIFICATION

**RESOLVED**, Authorized Officers, and each of them, are authorized, and directed, consistent with these Resolutions and with the advice of counsel to the Company: (i) to negotiate, execute, deliver, certify, file and/or record, and perform according to the terms of any and all of the agreements, documents, and instruments referenced herein, and such other agreements, documents, and instruments and assignments thereof as may be required or as such Authorized Officer deems appropriate or advisable, or to cause the negotiation, execution, and delivery

thereof, as the case may be, in such and substance as such Authorized Officer may approve, together with such changes and amendments to any of the terms and conditions thereof as such Authorized Officer may approve; (ii) to negotiate, execute, deliver, certify, file and/or record, and perform according to the terms of any agreements, documents, certificates, consents, and applications relating to the Resolutions adopted and matters ratified or approved herein and the transactions contemplated hereby, and amendments and supplements to any of the foregoing, and to take such other action as may be required or as such Authorized Officer deems appropriate or advisable in connection therewith; and (iii) to do such other things as may be required, or as may in such Authorized Officer's judgment be necessary, proper, or desirable, to carry out the intent and effectuate the purposes of the Resolutions adopted and matters ratified or approved herein and the consummation of the transactions contemplated hereby; and it is further

**RESOLVED,** that, subject to Bankruptcy Court approval as needed, the Authorized Officers, and each of them, are empowered, authorized, and directed, for and on behalf of the Company, to take or cause to be taken any and all such further actions, to execute and deliver or cause to be executed and delivered all such contracts, documents, instruments, and agreements providing for the engagement, retention, compensation, reimbursement of expenses and legal counsel, accounting firm, or other such consultants, advisors and other agents, to incur and pay all such fees and expenses and to retain any such legal counsel, cause to be paid all such fees and expenses as in their judgment shall be necessary, appropriate, or advisable to effectuate the purpose and intent of any and all of the foregoing resolutions, the making of any such payment conclusive evidence of the due authorization and approval thereof; and it is further

**RESOLVED**, that any person dealing with any Authorized Officer in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such Authorized Officer and by his or her execution of any document or agreement, the same shall be a valid and binding obligation of the Company enforceable in accordance with its terms; and it is further

**RESOLVED,** that all authority conferred by these resolutions shall be deemed retroactive and any and all acts authorized under these resolutions performed prior to the adoption of this resolution are hereby ratified, affirmed and approved; and that, without limitation of the foregoing, all actions heretofore taken for or on behalf of the Company by any authorized person in connection with the transactions contemplated by the preceding resolutions be, and hereby are, ratified, adopted and confirmed in all respects; and it is further

**RESOLVED**, that in the event the Bankruptcy Court fails to approve the employment of the CRO in the Bankruptcy Case, then Jeffrey Judd will be appointed an officer and sole director of the Company and Kravitz will be removed as CRO and sole director of the Company, subject to further order of the Bankruptcy Court; and it is further

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**RESOLVED**, that the Company shall indemnify, defend, and hold harmless, to the fullest extent permitted by the Company's governance documents and applicable law, each of the Authorized Officers with respect to any legal, equitable, or administrative claim of any kind whatsoever against such Authorized Officer in connection with, arising from, or related to any actions taken by such Authorized Officer in connection with the foregoing resolutions. The foregoing resolutions may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

Adopted as of the date first written above.

*Jeffrey Judd*
_____
By: Jeffrey Judd
Its: Director