BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
*Counsel for Daniel A. Ayala, Receiver*

Electronically Filed April 12, 2022

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 22-10942-mkn |
| J & J CONSULTING SERVICES, INC., | Chapter 11 |
| Debtor | **RECEIVER'S OPPOSITION TO EMERGENCY AGREED APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION, EMPLOYMENT, AND APPOINTMENT OF PETER KRAVITZ AS THE ALLEGED DEBTOR'S CHIEF RESTRUCTURING OFFICER** |
| | Hearing Date: April 15, 2022
Hearing Time: 10:00 a.m. |

Daniel A. Ayala (the "Receiver" or "Ayala"), the Receiver of the equity interests of the above captioned alleged debtor and debtor in possession, by and through his counsel, Fox Rothschild LLP, hereby files this *Opposition* (the "Opposition") to the *Emergency Agreed Application for Entry of an Order Authorizing the Retention, Employment, and Appointment of Peter Kravitz as the Alleged Debtor's Chief Restructuring Officer* [ECF No. 13] (the "CRO Application"), filed by Peter Kravitz ("Mr. Kravitz") of Province Partners, LLC ("Province").

This Opposition is made and based upon the *Declaration of Daniel A. Ayala* (the "Ayala Declaration") filed concurrently herewith, the points and authorities set forth below, any oral argument the Court may entertain at the hearing, and the papers and pleadings on file with the Court.

# I.

## STATEMENT OF RELEVANT FACTS

1. On March 16, 2022, Mark A. Murphy ("Murphy") filed a *Complaint* (the "Complaint") against Matthew Beasley ("Beasley"), Beasley Law Group PC ("Beasley Law"), Jeffrey Judd ("Judd"), J and J Purchasing, LLC ("J&J Purchasing"), and J & J Consulting Services, Inc. ("J&J Consulting" or "Alleged Debtor") (collectively, "Defendants") in the District Court for Clark County, Nevada (the "State Court"), initiating Case No. A-22-849806-B (the "State Court Case"). A true and correct copy of the Complaint is annexed to the Ayala Declaration as **Exhibit 1**.

2. The claims asserted in the Complaint stem from Murphy's status as a defrauded investor in Defendants' Ponzi scheme (the "Ponzi Scheme"). *See* Ayala Declaration, Exhibit 1.

3. On March 17, 2022, Murphy filed a *Petition for Appointment of Receiver* (the "Receiver Petition") in the State Court Case. A true and correct copy of the Receiver Petition is annexed to the Ayala Declaration as **Exhibit 2**.

4. On March 17, 2022, Keith Ozawa, Anthony Bonifazio, Brian Shumann, and Martin Kevin Cordova (collectively, the "Petitioning Creditors") filed involuntary chapter 11 petitions against J&J Consulting and J&J Purchasing (collectively, "Alleged Debtors"), initiating the above-captioned chapter 11 case (the "Alleged Bankruptcy Case").

5. On March 30, 2022, the State Court granted the Receiver Petition and entered its *Order Appointing Receiver* (the "Receivership Order"), appointing Ayala as the Receiver over all of the

1  Defendants. A true and correct copy of the Receivership Order is annexed to the Ayala Declaration
2  as **Exhibit 3**. In the Receivership Order, the State Court specifically noted that "Any and all
3  applicable bankruptcy stays or restrictions shall apply to the extent that the same would preclude
4  Receiver's direct receivership over either or both of [the Alleged Debtors]." *See* Ayala Declaration,
5  Exhibit 3, p. 2 n.1.

6.  On April 1, 2022, the Petitioning Creditors filed a *Motion for Appointment of (A) Chapter 11 Trustee Either (I) for Cause Under 11 U.S.C. § 1104(a)(1) or (II) in the Best Interests of Creditors Under 11 U.S.C. § 1104(a)(2) and Federal Rules of Bankruptcy Procedure 2007.1(a), 2009, and 9014 and (B) Gap Period Trustee Pending Entry of the Order for Relief Under 11 U.S.C. § 303* [ECF No. 6] (the "Trustee Motion"), which is set for hearing on April 15, 2022.

7.  In order to avoid burdening the Court with repetition, the Receiver incorporates the facts regarding the details of the Ponzi Scheme set forth in the Trustee Motion herein. *See* Trustee Motion, pp. 2-6.

## II.

## ARGUMENT

**A.    The Receiver, As Controlling Equity Holder, Is the Only Party Entitled to Make Decisions for the Alleged Debtor.**

Pursuant to the Receivership Order, the Receiver has been granted control over all assets of Judd and Beasley (collectively, "Judd/Beasley"), which, on information and belief, include the membership interests in the Alleged Debtor. Therefore, regardless of whether the automatic stay prevents the Receiver from exercising direct control over the Alleged Debtor's assets, the Receiver, as controlling equity owner of the Alleged Debtor, is the only party entitled to make decisions for the Alleged Debtor.

Nevertheless, Judd/Beasley continue to exercise control over the Alleged Debtor in violation of the Receivership Order, including by selecting a CRO to manage the Alleged Debtor as a precondition to consenting to the entry of an order for relief in the Alleged Bankruptcy Case. Judd/Beasley are Ponzi scheme operators who defrauded investors of over $300 million. They should not be permitted to force their selection of management on the Alleged Debtor's equity holder and

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

defrauded investors on shortened notice – especially where no order for relief has yet been entered.

**B.     There is No Need for a CRO, Trustee – or the Alleged Bankruptcy Case Altogether – Where the Receiver has Control of the Assets of All Relevant Players in the Ponzi Scheme.**

Further, the fact that Judd/Beasley filed the CRO Motion with the purported consent of the four Petitioning Creditors, shows it to be a transparent attempt to avert the appointment of a chapter 11 trustee – a person who, like the Receiver, would not be hand-picked by (or under the influence of) Judd/Beasley. As the Receiver will demonstrate in his opposition to the Trustee Motion, there is no need for a trustee, when the Receiver can accomplish the same results more efficiently outside of bankruptcy, resulting in greater and quicker recoveries for investors. Of particular concern is that, upon information and belief, all of the funds involved in the Ponzi Scheme were deposited into and disbursed from a trust account owned by Beasley Law, which is not one of the Alleged Debtors. It is possible that only the Receiver, charged with recovery of property of the Beasley Law estate, can pursue the fraudulent transfer claw back claims central to the unwinding of the Ponzi Scheme.

Although the four Petitioning Creditors may have consented to the appointment of a CRO, there are over 150 other defrauded investors who should not be railroaded into the appointment of a CRO on shortened notice based on Judd/Beasley's aversion to truly independent management. Rather, the preference of these investors must be taken into consideration, not only as to the appointment of a CRO, but as to the appropriateness of the Alleged Bankruptcy Case altogether.

**C.     There are Conflict of Interest and Fee Supervision Issues with the Province Retention.**

There are a number of issues of concern with the appointment of Mr. Kravitz as CRO for both Alleged Debtors.

*First*, there is a $50,000 flat fee for both Alleged Debtors, with no method for allocating the charge between them. With no schedules filed, parties in interest have little, if any, information on the assets/liabilities/causes of action of the Alleged Debtors and what allocation of the fee between the Alleged Debtors might be equitable.

*Second*, with no schedules filed, the extent of claims of one Alleged Debtor against the other and ensuing conflict between them are also unknown. On the one hand, the engagement agreement requires Mr. Kravitz to, "over the course of the retention, note any conflicts between J&J Consulting

3

and J&J Purchasing and make such disclosures to the Bankruptcy Court." *See Declaration of Peter Kravitz In Support of [CRO Application]* [ECF No. 14] (the "Kravitz Declaration"), Ex. "1" at ¶ 1(A).

On the other hand, Mr. Kravitz is responsible for:

- o  directing the investigation of all misfeasance, malfeasance and nonfeasance by persons that owe or owed duties to the Companies, including but not limited insiders and *affiliates*;
- o  directing all legal actions necessary or appropriate to protect the Companies' bankruptcy estates and best interest of the creditors, including the prosecution of all civil actions necessary or appropriate against insiders, *affiliates* and third parties to protect the Companies' bankruptcy estates and best interest of the creditors; and
- o  pursuing, settling, resolving or otherwise making all decisions relative to any claim for or against the Companies or any of their *affiliates*, subject to such approvals as may be required by the Bankruptcy Code.

*See* Kravitz Declaration, Ex. "1" at ¶¶ 1(I), (J) & (R) (emphasis added).

Again, at this early stage of the Alleged Bankruptcy Cases – before orders for relief have even been entered – it is unknown whether inter-Alleged Debtor conflicts will preclude Mr. Kravitz from effectively representing both Alleged Debtors' interests.

*Third*, the proposed Province engagement provides for no fee applications or other running supervision of the services provided – just the monthly payment of the $50,000 fee, with the Court's "ultimate" review for reasonableness. The engagement agreement further provides that "The Companies will receive a billing statement from Province monthly, which shall be due and payable upon issuance. Any amounts not paid by the Companies hereunder within thirty (30) days of the issuance of any billing statement or invoice shall accrue interest at a rate of eighteen percent (18%) per annum." *See* Kravitz Declaration, Ex. "1" at ¶ 2. It is wholly inappropriate to charge the Alleged Debtors' estates 18% interest on past due fees, and this provision must be stricken.

With respect to supervision, the Receiver suggests that Province be required (at a minimum) to file with the Court a report of staffing on the engagement for the previous month ("Report"), with copies to the Office of the United States Trustee (the "UST"), the Receiver, and any official

4

committee of unsecured creditors that may be appointed by the UST (collectively, the "Notice Parties"). Such Reports shall include the names of and functions filled by the individuals assigned and shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall: (a) be appended to the Reports; (b) contain detailed time entries (in half-hour increments) describing the task(s) performed; and (c) be organized by project category. The Notice Parties shall have twenty-one (21) days from the date a Report is served to file an objection thereto. In the event an objection is filed with respect to a Report, all compensation requested in that Report that is the subject of an objection shall be subject to review by the Court on a reasonableness standard.

*Finally*, in the event the Court is inclined to appoint Mr. Kravitz as the CRO, the order authorizing the appointment must require Mr. Kravitz to report to and take directions from the Receiver, as the Alleged Debtor's sole equity holder.

## III.

## CONCLUSION

For the reasons set forth above, the Receiver respectfully requests that the Court enter an order denying the CRO Application in its entirety, and granting the Receiver such other and further relief as is just and appropriate under the circumstances.

Dated this 12th day of April 2022.

**FOX ROTHSCHILD LLP**

By: _____*/s/ Brett A. Axelrod*_____
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*Counsel for Daniel A. Ayala, Receiver*

5