Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Emily D. Anderson, Esq.
Nevada Bar No. 13814
Schwartz Law, PLLC
601 E. Bridger Avenue
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887
*Attorneys for Petitioning Creditors Anthony Bonifazio, Keith Ozawa, Janelle Ozawa, Brian Schumann, and Darius F. Rafie*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| In re: | ) | Case No.: 22-10942-MKN |
|---|---|---|
| | ) | |
| J&J CONSULTING SERVICES, INC., | ) | Chapter 11 |
| | ) | |
| Alleged Debtor. | ) | Hearing Date: April 15, 2022 |
| | ) | Hearing Time: 9:30 a.m. |

**PETITIONING CREDITORS' OPPOSITION TO EMERGENCY MOTION OF RECEIVER TO DISMISS/ABSTAIN, OR, ALTERNATIVELY, FOR STAY RELIEF**

Petitioning Creditors, Anthony Bonifazio, Keith Ozawa, Janelle Ozawa, Brian Schumann, and Darius F. Rafie (collectively, the "**Petitioning Creditors**"), by and through their counsel of record, Schwartz Law, PLLC, hereby files the instant Opposition (the "**Opposition**") to the *Emergency Motion of Receiver to Dismiss/Abstain, or, Alternatively, for Stay Relief* (ECF No. 33) (the "**Motion**"). In support of the Opposition, Petitioning Creditors respectfully state as follows:

## I. PRELIMINARY STATEMENT.

1. The Receiver's request for this Court to abstain from or dismiss the Involuntary Petitions[1] results from a fundamental misunderstanding of the Bankruptcy Code and the tools available to a trustee or chief restructuring officer ("**CRO**") to claw back the proceeds of fraud

[1] The "**Involuntary Petitions**" refer to the involuntary petitions filed against the alleged debtors J and J Purchasing, LLC ("**Purchasing**") in Case No. 22-10943-MKN and J & J Consulting Services, Inc. ("**Consulting**," collectively with Purchasing, the "**Alleged Debtors**") in Case No. 22-10942-MKN.

from all culpable non-parties.[2] Whether these non-parties are also debtors is inconsequential to a trustee or CRO's ability to litigate to recover proceeds of the fraud and liquidate assets for the benefit of all stakeholders.

2.   The Receiver's position is that the district court's order appointing the receiver (the "**Receiver Order**")[3] entered on March 30, 2022 – 13 days after the involuntary petition date – is sufficient to obviate the need for these bankruptcy cases.  For the reasons set forth herein, it is evident the Bankruptcy Code provides far greater remedies and far superior procedures for recovering assets and distributing those assets equitably than the State Court receivership.  Accordingly, the Motion should be denied.

## II.   RELEVANT PROCEDURAL HISTORY.[4]

### A.   PROCEDURAL HISTORY

3.   On March 16, 2022, plaintiffs Mark A. Murphy and Mark A. Murphy, Ltd. (the "**Murphy Parties**") filed a complaint in the district court for the eighth judicial district of Nevada (the "**Murphy Complaint**").[5]

4.   The Murphy Complaint contained a request for a receivership over defendants (a) non-debtor Matthew Beasley, (b) non-debtor Beasley Law Group PC, (c) non-debtor Jeffrey Judd ("**J. Judd**"), (d) Consulting, and (e) Purchasing (collectively, the "**Receiver Defendants**").

5.   On March 17, 2022, the Murphy Parties filed a petition to appoint a receiver.

6.   On March 17, 2022, the Petitioning Creditors filed the Involuntary Petitions against the Alleged Debtors.

---

[2] Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy Procedure Rules 1001-9037. "**Civil Rule**" references are to the Federal Rules of Civil Procedure 1-86. "**Local Rule**" or "**L.R.**" references are to the Local Rules of Bankruptcy Practice of the United States District Court for the District of Nevada.

[3] *See* Receiver Order, Case No. A-22-849806-B, attached as Ex. 5 to ECF 34.

[4] The relevant facts of the admitted-to fraudulent scheme has been described and reiterated in numerous filings before this Court.  As such, the factual history set forth in ECF No. 6 is incorporated here.

[5] *See* Complaint, Case No. A-22-849806-B.

7. On March 28, 2022, the Murphy Parties filed a supplement to their petition to appoint a receiver.

8. On March 29, 2022, the Nevada District Court granted the appointment of a receiver.

9. On March 30, 2022, the Murphy Parties drafted and submitted, and the Nevada District Court entered, the Receiver Order.

10. On March 31, the Murphy Parties filed an amended complaint (the "**Amended Complaint**").[6] The Murphy Parties did not join with any additional plaintiffs; only defendants were added – these defendants are not currently covered by the Receiver Order.

11. On March 31 and April 4, 2022, the Petitioning Creditors filed (a) adversary complaints against Consulting, Purchasing, and J. Judd, among others, (b) motions for a preliminary injunction and temporary restraining order, and (c) motion for the appointment of a trustee against Consulting and Purchasing. These motions are set to be heard by the Bankruptcy Court on Friday, April 15, 2022.

12. On April 5, 2022, J. Judd caused an Emergency Agreed Application For Entry Of An Order Authorizing The Retention, Employment, And Appointment Of Peter Kravitz As The Alleged Debtor's Chief Restructuring Officer to be filed, which is also to be heard by the Bankruptcy Court on Friday, April 15, 2022.

13. On April 5, 2022, J. Judd filed a motion to set aside the Receiver Order which is to be heard by the Nevada District Court on Thursday, April 14, 2022.

14. On April 6, 2022, the Receiver filed a motion to clarify the Receiver Order which is to be heard by the Nevada District Courton Thursday, April 14, 2022.

15. On April 11, 2022, the Receiver filed a motion for a temporary restraining order which is to be heard by the Nevada District Court on Thursday, April 14, 2022.[7]

---

6 *See* Amended Complaint, Case No. A-22-849806-B, attached as Ex. 1 to ECF 34.

7 Surprisingly, this motion requests the Nevada District Court enjoin certain activity in the Bankruptcy Court; specifically, the Receiver requests the Nevada District Court "issue a TRO, and then a preliminary injunction, **prohibiting Judd from taking any action with respect to the J&J Entities <u>in the bankruptcy</u>**, including without limitation, **answering the involuntary bankruptcy petitions** (or being ordered to withdraw any answers), **retaining a chief restricting officer**, **or <u>petitioning for bankruptcy on behalf of either entity</u>**.

16. These three motions are set to be heard by the Nevada District Court one day before the Bankruptcy Court is set to hear the motion filed in the involuntary petitions and they have the potential to affect the Alleged Debtors, which would result in another violation of the automatic stay of Section 362 of the Bankruptcy Code in these cases.

**B. THE RECEIVER ORDER.**

17. The Receiver Order purports to establish a receivership estate over the Receiver Defendants, including the Alleged Debtors, pursuant to NRS 78.600.

18. The Receiver Order contained the following footnote:

> A Chapter 11 Involuntary Bankruptcy Petition has been filed as to J & J Consulting Services Inc. in the District of Nevada, Case No. 22-10942. A Chapter 11 Involuntary Bankruptcy Petition has also been filed as to J and J Purchasing LLC., in the District of Nevada, Case No. 22 -10943. **Any and all applicable bankruptcy stays or restrictions shall apply to the extent that the same <u>would preclude Receiver's direct receivership</u> over either or both of those entities**. The Receiver will include in his initial report, and as an ongoing concern, the status of those bankruptcies to the extent that they may or may not limit the Receiver's access to control over the same.

Receiver Order, § 1, fn. 1.

19. The Receiver was aware that the automatic stay pursuant to 11 U.S.C. § 362 could (and does) void his appointment over the Alleged Debtors, but the Receiver did not request relief from the automatic stay until April 12, 2022.

20. The Receiver Order, by its own terms, only applies to the Murphy Parties and fails to describe how the remaining investors will be repaid; specifically:

> After expending the necessary funds to operate the Property and pay all reasonable and necessary costs and expenses associated with such operation, the Receiver shall maintain any **remaining funds for distribution to Plaintiff** and such other party or non-party as may be **legally entitled** to receive such funds **in accordance with the requirements of NRS 107A.310**;[8] and may distribute such funds from time to time **without further order of this Court**;

Receiver Order, § 7(x).

[8] NRS 107A.310 only covers rents and the assignments of rents of real property.

21. Moreover, the Receiver Order does not give the Receiver the authority to bring claims for relief on behalf of non-party investors who have been harmed by the Alleged Debtors. Simply put, the Receiver only has authority to bring claims in the name of the Receiver Entities; specifically:

> To bring and prosecute **all proper actions against persons** for the (i) collection of monies derived from the Receivership Companies, (ii) removal from the property/persons not entitled to entry thereon, (iii) protection of the Receivership Estate, and (iv) recovery of possession of the Receivership Estate;

Receiver Order, § 7(f).

22. Lastly, the Receiver Order disclaims responsibility for numerous significant issues that a trustee or chief restructuring officer would resolve; specifically:

> Notwithstanding anything in this Order to the contrary, **Receiver** does not assume and is not obligated to assume and **will not be obliged to pay, perform or otherwise discharge any Employment Related Liability** (as defined below) **of Defendant**. Defendant is and will be solely and exclusively liable with respect to all Employment Related Liabilities. Without limitation of the generality of the foregoing, the term "Employment Related Liabilit(ies)" includes all liabilities of Defendant to any former or current employee in any way related to such employee's employment with or separation from the Defendant including, but not limited to, any claims: (i) **for salary, wages, commissions**, bonuses, benefits, vacation, or any other form of compensation; (ii) arising out of any acts or omissions of Defendant or Defendant's agents and representatives with respect to **any benefit plan, employee practices or employee programs**, including employee claims of discrimination, retaliation or other wrongful conduct or discharge decisions; (iii) **severance liabilities**; (iv) obligations under **employment contracts or any other related agreements** with employees; (v) any change of control amounts payable to any employees; (vi) all liabilities under the **Worker Adjustment and Retraining Notification Act (WARN) 29 U.S.C. 2101 et seq.**, or similar state statute or regulation and (vii) **any other** statutory or common law claim;

Receiver Order, § 7(z)(bb).

> Neither Plaintiff nor the Receiver shall be **liable for any obligation** of Defendant relating to the Receivership Companies that **arose prior to the Order Appointing Receiver**, including, without limitation, any **contingent or unliquidated obligations**, nor shall the Plaintiff or the Receiver be obligated to advance any funds to pay any expense of maintenance or other liability of the Receivership Companies other than as cash flows permits payment of such expenses;

Receiver Order, § 7(z)(cc).

> The Receiver shall have **no liability to any party for any claims, actions or causes of action arising out of or relating to events or circumstances occurring prior to the appointment of the Receiver**. This protection of the Receiver from liability shall include, but not be limited to any liability from the performance of services rendered by third parties on behalf of Defendant, and **any liability to which Defendant is currently or may ultimately be exposed** under any applicable laws pertaining to the ownership and use of the Property and operation of the Defendant's businesses;

Receiver Order, § 7(z)(dd).

> The Receiver shall not be responsible for payment of any **utility bills, unpaid payroll expenses or other unpaid invoices** for services or utilities incurred by the Borrower or for the benefit of the Property prior to the Receiver's taking possession of the Property.

Receiver Order, § 7(z)(ee).

> The Receiver shall **have no responsibility for paying any unpaid federal and state payroll taxes** and expenses of Defendant. The responsibility for such filings and payments lies exclusively with Defendant and its agents, employees, and representatives.

Receiver Order, § 7(z)(gg).

## III. LEGAL ARGUMENT.

### A. THE INVOLUNTARY PETITIONS SHOULD NOT BE DISMISSED.

23. The Receiver has not and cannot demonstrate the Involuntary Petitions should be dismissed pursuant to 11 U.S.C. 1112(b)(4). Subsection (b)(1) provides:

> **[T]he court shall <u>convert</u> a case** under this chapter to a case under chapter 7 **or <u>dismiss</u> a case** under this chapter, whichever is in the **<u>best interests of creditors and the estate</u>**, for cause **<u>unless</u> the court determines that the appointment under section 1104(a) <u>of a trustee</u>** or an examiner **is in the <u>best interests</u> of creditors and the estate**.

24. If cause is established, the decision whether to convert or dismiss the case falls within the sound discretion of the court. *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 612 (9th Cir. BAP 2014). Further, if the bankruptcy court determines that cause exists to convert or dismiss, it *must* also: (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (2) identify whether there are

unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. *Id.* (*citing* § 1112(b)(1), (b)(2)).

25. The Petitioning Creditors already moved for the appointment of a trustee as provided in subsection (b)(1). Appointment of a trustee (or CRO) is in the best interests of the creditors and the estate given the extensive fraud of which the Alleged Debtors are accused.[9] A trustee or CRO would be authorized to bring claims against both non-debtor culpable parties and on behalf of other creditors, besides the Murphy Entities. A trustee or CRO would have extensive and comprehensive authority to bring fraudulent transfer and preference claims against non-debtor parties in throughout Nevada, Arizona, California, and Utah. Accordingly, it would harm both the creditors and the estate to dismiss the involuntary petitions because this Court is the best suited to administer the assets, claims and causes of action of these Alleged Debtors, and it provides one forum for all parties-in-interest to have their claims heard and resolved.

26. Subsection (b)(4) sets forth circumstances in which cause for conversion, dismissal, or the appointment of a trustee may be found. This subsection lists sixteen acts or omissions that may constitute "cause" under 11 U.S.C. § 1112(b)(1). None of these events have occurred yet because the involuntary petitions have not yet been entered. Nevertheless, it is evident from the underlying facts regarding the fraud that the Alleged Debtors cannot be left in control of their own destinies. The resolution, however, is to appoint a trustee (or CRO) – not to dismiss the involuntary petitions.

27. Therefore, cause exists to appoint a trustee (or CRO),[10] and this Court' analysis can and should stop there.

**B.    THE INVOLUNTARY PETITIONS SHOULD NOT BE STAYED.**

28. Section 1112(b) does not provide authority for the Bankruptcy Court to issue a stay of the involuntary petitions while the Receiver effectuates the Receiver Order. As discussed above,

---

[9] *See* Motion to Appoint a Trustee. ECF No. 6.

[10] There is no basis for the allegation that "presumably the CRO will still be reporting to Beasley and Judd." Motion, pg.9, ln.11. The CRO Motion is clear that Peter Kravitz is a disinterested third-party just as capable as the Receiver.

the issue is straightforward: in the Court's discretion, is dismissal, conversion, or the appointment of a trustee or examiner in the best interests of creditors and the estate when considering any unusual circumstances? As discussed above, the extensive underlying fraud demonstrates that a trustee (or CRO) is necessary to protect the bankruptcy estates of the Alleged Debtors and it demonstrates that Bankruptcy Court is the best-suited to address the claims of creditors across at least four different states. Therefore, there is no basis to stay the involuntary proceedings, so the Court should reject dismissal and appoint and trustee (or CRO).

### C. THE BANKRUPTCY COURT SHOULD NOT ABSTAIN FROM ENTERING RELIEF AGAINST THE ALLEGED DEBTORS PURSUANT TO 11 U.S.C. § 305.

29. The Receiver cannot demonstrate that both the debtor and the creditors would be "better served" by a dismissal of the Involuntary Petitions. Section 305(a)(1) provides as follows:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if –
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

30. "The courts that have construed § 305(a)(1) are in general agreement that abstention in a properly filed bankruptcy case is an extraordinary remedy, and that dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that both 'creditors and the debtor' would be 'better served' by a dismissal." *Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995) (citations omitted).

31. The Petitioning Creditors, as well as several other investors, have indicated that this Court is where they want this litigation to go forward, and the Alleged Debtors have agreed to the appointment of a chief restructuring officer also indicating a preference for this Court. Further, as indicated in the Receiver Order, it: (a) only applies to the Murphy Parties and fails to describe how the remaining investors will be repaid; (b) only gives the Receiver authority to bring claims in the name of the Receiver Entities, not the individual investors; and (c) disclaims responsibility for numerous significant issues that a trustee or chief restructuring officer would resolve.

32. The precise language of the Receiver Order is dispositive. In *Aaron v. Rosepink*,

the Bankruptcy Court for the District of Arizona dismissed a lawsuit brought by a receiver because the order appointing the receiver did not provide authority for the lawsuit; specifically:

> The order appointing the receiver, entered in May, 2006, does not expressly vest in the Receiver any creditors' claims. Instead, the order merely grants the Receiver authority to recover and preserve the assets of the Receivership Defendants. It defines "Receivership Assets" to be "all of the property owned by, controlled by, or in the name of any of the Receivership Defendants." That definition obviously does not include any money that had previously been transferred to and is currently owned by an investor, a fraudulent transferee or a commission agent such as Rosepink. . . . None of this language suggests creditor avoidance actions were intended to be vested in the Receiver.
>
> Moreover, although the receivership order includes a broad stay of litigation, it only stays 'any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, any of the Receivership Defendants . . . .' That stay would not preclude a creditor of the Galyon entities from bringing a fraudulent conveyance action against any transferee of the Galyon entities, because such action would not assert any claim against, on behalf of or in the name of any of the Galyon entities. This failure to stay creditor fraudulent transfer actions suggests there was no intent to vest such actions in the Receiver. Absent such a stay, creditor actions could compete with the Receiver's actions to recover fraudulent transfers. And a creditor could conceivably recover on his own fraudulent transfer action and yet also claim a *pro rata* share of the proceeds of the Receiver's fraudulent transfer actions, effectively rewarding a creditor with a double recovery even though his own action may have threatened the Receiver's recovery.

*Aaron v. Rosepink (In re Glob. Grounds Greenery, LLC)*, 405 B.R. 659, 663-64 (Bankr. D. Ariz. 2009). As the foregoing demonstrates, a receiver is constrained by the order appointing it and the state statues, whereas the Bankruptcy Code is exhaustive and well-developed, so recoveries will not be threatened by such unanticipated state law issues.

33. In arguing this Court should abstain, the Reciver cites to *Scholes v. Lehmann*, in which the Seventh Circuit discussed the defense of in *pari delicto*, and stated in dicta that:

> Corporate bankruptcy proceedings are not famous for expedition, however; and whatever advantages they may have over receiverships in a case such as this--if any, and none has been pointed out to us--are not ones that the defendants in these fraudulent conveyance actions should be heard to trumpet.

*Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995).

34. The Receiver does not include, however, that the Seventh Circuit also stated:

> **The conceivable alternatives to these suits for getting the money back into the pockets of its rightful owners** are a **series of individual suits by the investors**, which, even if successful, would multiply litigation; **a class action by the investors**--and class actions are clumsy devices; **or, most plausibly, an adversary action, in bankruptcy, brought by the trustee in bankruptcy of the corporations if they were forced into bankruptcy**.

*Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995). This is precisely what the Petitioning Creditors intend here: for a trustee (or CRO) to substitute into the filed Adversary Complaints. Indeed, unlike *Scholes*, numerous creditors want to be in bankruptcy court and those creditors filed first, while the Receiver knowingly and perhaps intentionally violated the automatic stay.

35. Moreover, the Receiver Order is void as to the Alleged Debtors. Indeed, the Nevada Supreme Court has agreed with the Ninth Circuit stating "[t]he Ninth Circuit has held that acts in violation of the automatic stay are void *ab initio* . . . ." *LN Mgmt. LLC Series 5105 Portraits Place v. Green Tree Loan Servicing LLC*, 133 Nev. 394, 396-97, 399 P.3d 359, 360 (2017), *citing In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992). "In other words, the difference between a void and a voidable transaction is that the former "can never become valid," and the latter "can be made valid by subsequent judicial decision. Until that decision is rendered, however, it is not valid." *Id., citing In re Pierce*, 272 B.R. 198, 207 n.21 (Bankr. S.D. Tex. 2001).

36. The Receiver Order was entered 14 days after the involuntary petitions were filed. Pursuant to Section 362(a), the automatic stay applies to involuntary petitions filed pursuant to 11 U.S.C. § 303. *See* 11 U.S.C. § 362(a). Not only is there no question that the involuntary petitions were filed 2 weeks before the Receiver Order was heard or entered, but the Receiver had knowledge of the Involuntary Petitions when the Receiver Order was entered.

37. Accordingly, the Receiver knowingly and intentionally caused the Receiver Order to be signed and violated the automatic stay pursuant to 11 U.S.C. § 362. Therefore, the flaws in the procedural posture of the Receiver demonstrate the creditors cannot and will not benefit from the Court's abstention under Section 305. Accordingly, the Motion should be denied.

### D. THE BANKRUPTCY COURT SHOULD NOT LIFT THE AUTOMATIC STAY FOR THE RECEIVER TO PROCEED AGAINST THE ASSETS OF THE ESTATES OF THE ALLEGED DEBTORS.

38. The Court should not lift the automatic stay for "cause" under 11 U.S.C. § 362(d)(1); specifically, Section § 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) **for cause**, including the lack of adequate protection of an interest in property of such party in interest[.]

*Yun Hei Shin v. Altman (In re Altman)*, 2018 Bankr. LEXIS 1947, at *15-16 (B.A.P. 9th Cir. June 26, 2018).

39. What constitutes "cause" for granting relief from the automatic stay is decided on a case-by-case basis. *Kronemyer v. Am. Contractors Indem. Co. (In re Kronemeyer)*, 405 B.R. 915, 921 (9th Cir. BAP 2009). Among factors which the bankruptcy court may consider when deciding whether to lift the stay to permit litigation in another forum are considerations of judicial economy, the expertise of the state court, prejudice to the parties and whether exclusive bankruptcy issues are involved. *In re Kronemyer*, 405 B.R. at 921. In *Kronemyer*, the Panel agreed that the so-called *Curtis* factors articulated in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow litigation to continue in another forum. *Id.* The *Curtis* factors include:

> (1) Whether the relief will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and (12) The impact of the stay on the parties and the 'balance of hurt.'

*Yun Hei Shin v. Altman (In re Altman)*, 2018 Bankr. LEXIS 1947, at *16-17 (B.A.P. 9th Cir. June

26, 2018) *citing In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).

40. The factors cited by the Receiver do not support relief from the automatic stay; specifically:

- The Receiver Order does not allow for partial or complete liquidation of the assets of and claims against the Alleged Debtors because it: (a) only applies to the Murphy Parties and fails to describe how the remaining investors will be repaid; (b) only gives the Receiver authority to bring claims in the name of the Receiver Entities, not the individual investors; and (c) disclaims responsibility for numerous significant issues that a trustee or chief restructuring officer would resolve. The authority of the Receiver is necessarily less broad than those of a bankruptcy trustee (or CRO).
- The Receiver acknowledges that the Receiver Order and the involuntary petitions will attempt to recover the same fraudulent transfers on behalf of the Alleged Debtors and investors. The Receiver believes, however, that his authority is broader, and as such, his resolution will be more complete than a trustee or (CRO) could accomplish. As such, effectuation of the Receiver Order will certainly overlap and interfere with the trustee or (CRO) ability to recover the same assets.
- The Petitioning Creditors have moved for the appointment of a trustee and support the appointment of the proposed chief restructuring officer. Accordingly, J. Judd will have no control over the Alleged Debtors or the litigation to recover the proceeds of the fraud.
- The investors will ultimately be better served by a trustee or CRO, and, as such, the balance of the hurt weighs against the Receiver, who will not be hurt in any way by allowing the trustee or (CRO) to proceed. A trustee or CRO will have a broader ability to prosecute non-debtors Beasley Law and Matthew Beasley than the Receiver and will be able to bring claims on behalf of creditors which the Receiver cannot do.

41. Based on the *Curtis* factors, the Receiver cannot demonstrate cause sufficient to lift the automatic stay when the Receiver has acknowledged that the litigation of the Receiver and the trustee or CRO will have the same purpose: to recover the proceeds of the fraud in order to repay the investors that feel victim to the fraudulent scheme.

## IV. CONCLUSION

42. For the reasons set forth above, the Petitioning Creditors respectfully request that the Court enter an order denying the Motion in its entirety.

DATED: April 14, 2022.

Respectfully Submitted,

SCHWARTZ LAW, PLLC

By: /s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq.
601 East Bridger Avenue
Las Vegas, NV  89101
*Attorneys for Petitioning Creditors Anthony Bonifazio, Keith Ozawa, Janelle Ozawa, Brian Schumann, and Darius F. Rafie*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent electronically via the Court's CM/ECF system on April 14, 2022, to the following:

KEVIN N. ANDERSON on behalf of Defendant JEFFREY J. JUDD AND JENNIFER J. R. JUDD, AS TRUSTEES OF JUDD NEVADA TRUST, DATED DECEMBER 15, 2020
kanderson@fabianlaw.com,
sburdash@fabianvancott.com;mdonohoo@fabianvancott.com;amontoya@fabianvancott.com;twaite@fabianvancott.com

KEVIN N. ANDERSON on behalf of Interested Party JEFFREY JUDD
kanderson@fabianlaw.com,
sburdash@fabianvancott.com;mdonohoo@fabianvancott.com;amontoya@fabianvancott.com;twaite@fabianvancott.com

BRETT A. AXELROD on behalf of Interested Party DANIEL A. AYALA
baxelrod@foxrothschild.com, pchlum@foxrothschild.com;mwilson@foxrothschild.com

ALAN MAZA on behalf of Creditor U.S. SECURITIES AND EXCHANGE COMMISSION
mazaa@sec.gov, baddleyd@sec.gov

ALAN MAZA on behalf of Interested Party SECURITIES AND EXCHANGE COMMISSION
mazaa@sec.gov, baddleyd@sec.gov

TERESA M. PILATOWICZ on behalf of Other Prof. Peter Kravitz
tpilatowicz@gtg.legal, bknotices@gtg.legal

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail on April 14, 2022, to the following:

J&J Consulting Services, Inc.
c/o its Registered Agent
Nevada Corporate Agent Services, Inc.
2700 E. Sunset Road, Ste. 9
Las Vegas, NV 89120

J&J Consulting Services, Inc.
c/o Jennifer Judd, Secretary
9 Sky Arc Court
Henderson, NV 89012

J and J Purchasing, LLC
c/o its Registered Agent
Northwest Registered Agent, LLC
7901 4th Street North
Suite 300
St. Petersburg, FL 33702

Matthew Beasley
5475 Ruffian Road
Las Vegas, NV 89149

Paula Beasley
5475 Ruffian Road
Las Vegas, NV 89149

Beasley Law Group
c/o Matthew Beasley, President
5475 Ruffian Road
Las Vegas, NV 89149

Karsen D. Jager
16 Paradise Valley Court
Henderson, NV 89052

Willow A. Jager
16 Paradise Valley Court
Henderson, NV 89052

John Cannon, as Trustee of
The Carolina Chase Trust
15165 Ventura Blvd., Ste. 230
Sherman Oaks, CA 91403

Jason Jongeward
3084 Regal Court
Washington, UT 84780

Shane M. Jager and
Willow A. Jager, as Trustees of
Jager Family Trust, Dated June 30, 2003
And Amended June 30, 2009
16 Paradise Valley Court
Henderson, NV 89052

Stirling Consulting LLC
c/o its Registered Agent
Shane Jager
6785 S. Eastern Avenue
Unit 8
Las Vegas, NV 89119

/s/Susan Roman
Susan Roman, an Employee of
SCHWARTZ LAW, PLLC